FILED
CLERK
1:45 pm, May 02, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARY-ELLEN GRAZIANO,

      Plaintiff,

   -against-          ORDER
                17-CV-3927(SJF)(AKT)

TARGET CORPORATION,

      Defendant.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

I. Introduction

  On June 1, 2017, plaintiff Mary-Ellen Graziano ("plaintiff") commenced this negligence action against defendant Target Corporation ("defendant") in the Supreme Court of the State of New York, County of Suffolk, seeking damages for personal injuries she allegedly sustained as a result of a slip and fall on defendant's premises. On June 30, 2017, defendant filed a notice of removal, removing the action to this Court pursuant to 28 U.S.C. § 1441 on the grounds that this Court has original jurisdiction under 28 U.S.C. § 1332(a) based upon the diversity of citizenship of the parties. Pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted to the extent set forth herein.

II. Background

  A. Factual Allegations[1]

---

[1] Since plaintiff did not submit a counterstatement responding to defendant's statement of material facts pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts

1

On August 31, 2016, plaintiff was at defendant's store located in Riverhead, New York, with her husband and their grandson, who was seventeen (17) months old at that time. (Defendant's Statement of Material Facts pursuant to Local Civil Rule 56.1 ["Def. 56.1"], ¶¶ 1-2 and n. 1). Prior to the accident, plaintiff and her husband had been to that store approximately five (5) to ten (10) times. (*Id.*, ¶ 3).

Plaintiff, her husband and their grandson entered the store through the front right entrance and remained together the entire time they were in the store, with Mr. Graziano pushing the shopping cart. (Def. 56.1, ¶ 4). After the trio passed the registers, they turned left into the main aisle. (*Id.*, ¶ 5). At some point, they made another left turn into an aisle with a refrigerated case against the side wall which contained milk. (*Id.*). Other items in the aisle included eggs and cheese on one side and produce on the other. (*Id.*, ¶ 6). The aisle into which they had turned was approximately forty-eight feet (48') long and eight feet (8') wide, which was wide enough for two (2) carts to pass through. (*Id.*). The lighting was adequate. (*Id.*, ¶ 7). Neither plaintiff nor her husband saw any of defendant's employees in the aisle before the accident. (*Id.*, ¶ 9).

---

of New York ("Local Civil Rule 56.1"), as required by Local Civil Rule 56.1(b), the facts as set forth in defendant's statement are deemed admitted pursuant to Local Civil Rule 56.1(c), *see Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003), to the extent that they are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See* Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion.") Only those facts that are material to the disposition of the motions, *i.e.*, that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), are set forth herein. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (brackets in original) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

Plaintiff claims that as she entered the aisle, she was holding onto the cart, which was to her left, with her left hand. (Def. 56.1, ¶ 10). She took no more than three (3) or four (4) steps into the aisle when she allegedly slipped on a puddle and fell. (*Id.*). Plaintiff was wearing flip flops at the time of the accident. (*Id.*, ¶ 11).

The Guest Incident Report prepared on the day of the accident indicates that plaintiff's husband reported the puddle to be approximately one foot (1') wide.[2] (Def. 56.1, ¶ 12). The Patient Care Report of the Riverhead Volunteer Ambulance Corps, dated August 31, 2016, indicates that plaintiff was found sitting in "a small puddle of water."[3] (*Id.*, ¶ 13). Both plaintiff and her husband testified that they did not see the puddle until after plaintiff fell. (*Id.*, ¶¶ 14-15).

Five (5) days after the accident, plaintiff gave a recorded statement in which she indicated, *inter alia*, that "just water" was on the floor where she fell, and that whatever dirt or mud was in the water came from her flip flops.[4] (Def. 56.1, ¶ 16). During her deposition, plaintiff described the water as both "milky looking" and a "brownish color,"[5] (Affirmation of William T. Collins, III ["Collins Aff."], Ex. S at 24, 26); and testified that she touched the water with her hands and felt that it did not have any texture to it. (Def. 56.1, ¶ 17).

---

[2] During her deposition, plaintiff testified that the Guest Incident Report was accurate except for the time of the accident, the style of her shoes and the omission of injuries to her left hip and left eye from hitting the side of the shopping cart as she fell. (Collins Aff., Ex. S at 56-58). However, Mr. Graziano subsequently testified that the size of the puddle was approximately three feet (3') by three feet (3'). (*Id.*, Ex. U at 37).

[3] According to plaintiff, the ambulance arrived approximately ten (10) to fifteen (15) minutes after she fell and the water was still present when the EMS arrived. (Collins Aff., Ex. S at 41-42).

[4] During her deposition, plaintiff testified that the transcript of the recorded statement was accurate. (Collins Aff., Ex. S at 59-60).

[5] Plaintiff also described the water as "cool," "cold" and "getting colder," although she testified that she did not know if it was "because [she] was in shock but it was cold." (Collins Aff., Ex. S at 30).

Plaintiff's husband testified that he did not observe any water flowing into the puddle or any change in the size of the puddle during the five (5)-minute interval after plaintiff fell.[6] (Def. 56.1, ¶¶ 18-19).

Plaintiff had not been down the aisle prior to the alleged accident, and neither she nor her husband know how long the puddle existed prior to the accident. (Def. 56.1, ¶ 20). Neither plaintiff nor her husband noticed any footprints or cart marks in or through the puddle, (*id.*, ¶ 21); and Mr. Graziano testified that he did not see any signs that someone had slipped in the puddle prior to the accident. (*Id.*, ¶¶ 21-22). Plaintiff cannot state with any certainty that the liquid was coming from the nearby refrigerator case, (*id.*, ¶ 23); and testified that she has "no idea" how it got there.[7] (*Id.*, ¶ 24). Likewise, plaintiff's husband testified that he never learned the cause or source of the puddle.[8] (*Id.*, ¶ 24).

---

[6] In contrast, plaintiff testified that she "think[s]" that the puddle "became more," or got larger, as she sat on the ground after the accident. (Collins Aff., Ex. S at 25). However, as indicated above, plaintiff claims that she "was in shock" at that time. (*Id.*, at 30).

[7] In her recorded statement, plaintiff indicated, *inter alia*, that she believed the water came from the "refrigeration" because she "thought somebody said" that "[t]hey was [sic] cleaning the cooling system," (Collins Aff., Ex. I at p. 4), and the water was located "right at the beginning of that [refrigerated] case." (*Id.*). She later testified during her deposition that she "could see the water coming out of the . . . refrigerated case," (*id.*, Ex. S at 25-26, 39); that two (2) men "came from the back" and said that "they were working on that refrigerator or something[,]" that "they were working on the leak or the refrigerator," or that "[t]hey were doing something with the refrigeration," (*id.* at 34-36, 38, 64-65); that she has "no idea" if those men were defendant's employees, (*id.* at 35, 37); and that she "believe[s]" they were talking to the manager standing behind her. (*Id.* at 37-38). When asked if the men specifically said refrigerator or cooler, plaintiff testified, "They said refrigeration. I remember that word." (*Id.* at 38). When shown the transcript of her prior recorded statement, and asked if the men had said they were cleaning the cooling system, plaintiff responded: "They were doing something to it. I really didn't pay that much attention. I was more concerned with myself. But they did come out and say they were doing something over there." (*Id.* at 62-63). Plaintiff did not see anybody working on the refrigeration system while she was in the store; nobody ever told her specifically that the refrigerators were being worked on; the manager never said anything about the refrigerators being worked on; and plaintiff has no other information about there being any work or service on the cooling system on any of the refrigerators in the Riverhead store other than the conversation she allegedly overheard from the two (2) unidentified men. (*Id.* at 38-39, 63, 81). When asked if she was specifically aware of how the puddle got there, plaintiff responded, "Only what I would think." (*Id.* at 63). When asked, "But other than what you think?" plaintiff responded, "No. No. I have no idea." (*Id.*).

[8] Mr. Graziano testified that he believed the water came from the refrigerated case because his "wife was sitting in the puddle of water, and the only possible place that it could come from – that it looked like it was coming from was

Adam Rosset ("Rosset"), defendant's property management technician at the Riverhead store on the day of the accident, whose duties included general facilities maintenance at the store, gave a sworn statement indicating, *inter alia*, (i) that he was not aware of any complaints of leaks, or of any repair or maintenance issues with the meat case adjacent to where plaintiff slipped and fell, or of any refrigerated cases adjacent thereto, before, on or after August 31, 2016, (Def. 56.1, ¶ 25); and (ii) that no maintenance or repair work was being conducted on any of the refrigerated cases in defendant's Riverhead store on the day of plaintiff's accident. (*Id.*, ¶ 26). Defendant's maintenance and repair records for the refrigerated cases at the Riverhead store show that there were no complaints or reports of leaks or malfunctions concerning, and no repairs or requests for repairs to be made to, the subject refrigerated meat case, or any adjacent refrigerated case, during the period from six (6) months before to six (6) months after plaintiff's accident. (*Id.*, ¶ 27). According to Rosset, those records would list any such complaints, reports and/or repairs. (*Id.*). In addition, there is no indication in the records that the subject refrigerated meat case, or any refrigerated case adjacent thereto, was leaking or required anything more than preventative maintenance at any time before plaintiff's accident. (Collins Aff., Ex. Y, ¶ 6 and Ex. A thereto).

Valentina Dastres ("Dastres"), defendant's Consumables Team Lead on the date of the accident, (Collins Aff., Ex. V, ¶ 2), inspected the area where plaintiff fell approximately ten (10)

---

underneath the refrigeration[,]" (Collins Aff., Ex. U at 37-38), and because he observed that "at least some of the water was underneath the case." (*Id.* at 38). In addition, Mr. Graziano testified that "the fellow that came that worked for Target said to [him] that they were cleaning out the refrigerator cases . . . [s]o [he] assume[s] that [the water] came from the cases from them cleaning it," but he does not know and he never learned the source or the cause of the water. (*Id.* at 42). He further testified that he does not know how the puddle got there or how long it existed before the accident, (*id.* at 39); nobody ever told him the cause or source of the puddle, (*id.* at 42); and he did not observe anything that indicated to him that the refrigerated cases in the area of the accident were being cleaned out at the time of the accident. (*Id.* at 42-43).

5

to fifteen (15) minutes prior to the accident and found the floor to be "clean, dry and free of liquids or spills." (Def. 56.1, ¶ 28). Dastres did not observe any spills or water leaking from the subject refrigerated case, or any adjacent cases, either before the accident occurred or when she returned to the scene shortly thereafter. (*Id.*, ¶ 29). Dastres averred that she "was not aware of the liquid before the incident and no one ever advised [her] that he or she was." (Collins Aff., Ex. V, ¶ 11).

Non-party witness Brenda Balcarcel averred that the spill consisted of "clear water," the source of which she could not determine; and that she is unaware of how long the water was present on the floor before the accident or whether it was ever reported to defendant before the accident. (Def. 56.1, ¶ 31).

Defendant's Executive Team Leader, Andrew Rylander ("Rylander"), testified that defendant's employees are trained to keep a lookout for spills and to immediately clean them up upon noticing them; and that all of the ninety (90) to one hundred (100) employees on duty in the Riverhead store during open hours have a role in identifying hazards.[9] (Def. 56.1, ¶ 32).

B. Procedural History

On June 1, 2017, plaintiff commenced this personal injury action against defendant in state court, seeking damages, *inter alia*, for defendant's allegedly negligent ownership, operation, maintenance and/or control of the Riverhead store. On June 30, 2017, defendant filed a notice of removal, removing the action to this Court pursuant to 28 U.S.C. § 1441 on the

---

[9] Since, *inter alia*, on a motion for summary judgment the Court is required to "construe the evidence in the light most favorable to the nonmoving party," *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), the Court considers Rylander's testimony only for the purposes of the training and duties of defendant's employees and has not considered the affidavit of Asani Walford in determining this motion.

grounds that this Court has original jurisdiction under 28 U.S.C. § 1332(a) based upon the diversity of citizenship of the parties. Issue was joined by the service of an answer on behalf of defendant on July 6, 2017.

During an initial pretrial conference before the undersigned on November 13, 2017, *inter alia*, the Court set July 12, 2018 as the deadline for the completion of all discovery in this matter. By order dated July 11, 2018, the Court granted the parties' joint request for an extension of time to complete discovery regarding the issue of damages only, and extended the deadline for the completion of discovery on the issue of damages to October 12, 2018.

As neither party ever sought an extension of time to complete discovery on the issue of liability, discovery on the issue of liability was complete as of July 12, 2018. Accordingly, on or about August 22, 2018, defendant served its motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the issue of liability upon plaintiff in accordance with the undersigned's individual rules.

Thereafter, on August 24, 2018, *i.e.*, more than six (6) weeks after the deadline for the completion of discovery on the issue of liability had expired, plaintiff requested an extension of time to oppose defendant's motion until October 31, 2018 in order to be able "to properly oppose [the] motion" with an expert's affidavit. Defendant opposed the motion. Since, *inter alia*, discovery on the issue of liability was complete as of July 12, 2018, and defendant, having already served a motion for summary judgment, would be prejudiced by such extension, plaintiff's application was denied by order dated August 29, 2018.

III. Discussion

    A. Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted). On a motion for summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In

8

determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *accord Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient'

9

to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (quotations and citations omitted).

Summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187, 198 L. Ed. 2d 255 (2017); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the

nonmoving party's case[.]" (quotations, alterations and citation omitted)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.") "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage*, 875 F.3d at 114 (quotations and citation omitted); *see also DeRogatis v. Bd. of Trs. of Welfare Fund of Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFLCIO ("In re DeRogatis")*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence." (quotations, alterations and citation omitted)).

B. Slip-and-Fall Negligence Claims

Under the substantive law of New York, which the parties do not dispute applies in this diversity case, *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938), in order "[t]o succeed on a slip-and-fall negligence claim . . . a plaintiff must demonstrate the existence of a dangerous or defective condition and must show either that the defendant created a dangerous condition or that the defendant had actual or constructive knowledge of the condition." *Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94, 95 (2d Cir. Feb. 8, 2019) (summary order) (quotations and citation omitted); *see also Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. June 4, 2008) (summary order) ("To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." (quotations, alterations and citation omitted)); *Taylor v. United States*, 121 F.3d 86, 89-90 (2d Cir. 1997) ("Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition.")[10]

---

[10] "Though New York law applies a different standard for summary judgment in slip-and-fall cases, the federal standard controls here because what burdens each party bears on summary judgment is a procedural rather than substantive matter." *Painchault v. Target Corp.*, No. 09-cv-1831, 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011) (quotations, alterations and citation omitted); *see also Casierra v. Target Corp.*, No. 09-cv-1301, 2010 WL 2793778, at * 1 (E.D.N.Y. July 12, 2010) ("Though New York law supplies the elements of [the plaintiff's] cause of action against Target, federal procedural law provides the standard for deciding whether Target is entitled to summary judgment on that cause of action.") "Since, under New York law, [the plaintiff] would bear the burden at trial of showing that [the defendant] had actual or constructive notice of the condition that caused her fall, the court must grant summary judgment if 'the record contains no evidence establishing a genuine issue of material fact with respect to causation, actual notice or constructive notice.'" *Painchault*, 2011 WL 4344150, at * 3 (quoting *Tenay*, 281 F. App'x at 13).

12

The record is devoid of any evidence that defendant either created the condition that allegedly caused plaintiff's fall or had actual notice of the condition prior to plaintiff's fall. Aside from their own speculation, neither plaintiff nor her husband know the source of the puddle; and they both aver, as do defendants' employees, that they did not see the puddle prior to the accident. There is also no evidence in the record indicating that any of defendant's employees knew the source of the puddle or received any complaints, or heard anything, about the puddle or water leaking from the refrigerated cases prior to the accident; and plaintiff and her husband both testified that they did not see any of defendant's employees in the aisle where she fell before the accident. Moreover, the evidence indicates that defendant's employees were trained to immediately clean up leaks or spills upon noticing them, and the record is bereft of evidence from which it may reasonably be inferred that any employee ever noticed the puddle but failed to carry out that duty. *See, e.g. Strass v. Costco Wholesale Corp.*, No. 14-cv-6924, 2016 WL 3448578, at * 4 (E.D.N.Y. June 17, 2016) (finding that the plaintiff could not prove that the defendant created or had actual notice of the spill where she did not know the origin of the condition on which she fell and did not "identify any evidence that would support a finding that [the defendant] was, in fact, aware of the condition that allegedly caused [her] fall."); *Painchault*, 2011 WL 4344150, at * 3 (finding that the defendant did not create or have actual notice of the condition that caused the plaintiff to fall where neither the plaintiff nor the defendant's employee knew the source of the spill or saw the spill prior to the plaintiff's fall; and there was no evidence that any of the defendant's employees saw or heard about the spill prior to the accident, or that an employee noticed the spill but failed to carry out his or her duty to immediately clean up spills upon noticing them).

13

In addition, the record evidence that would be admissible at trial demonstrates that no maintenance or repair work was being conducted on defendant's refrigerated cases on the date of the accident; that the refrigerated cases were regularly maintained and were not leaking at any time during the six (6) month period prior to the accident; and that there were no complaints of leaks or requests for repairs of the refrigerated cases between the last preventative maintenance performed on the refrigerated cases prior to the accident on August 26, 2016 and the first preventative maintenance performed on the cases after the accident on September 22, 2016. The statements of two (2) unidentified men, who plaintiff could not even identify as defendant's employees, about "working on" or "doing something with" the cooling system, refrigerator, leak and/or refrigeration, (Collins Aff., Ex. S at 34-36, 38-39, 63-65), which plaintiff claims she overheard as she was sitting on the floor after her fall, constitute inadmissible hearsay, *see Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment" (quotations, alterations and citation omitted)); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp*, 769 F.2d 919, 924 (2d Cir. 1985) (holding that the non-moving party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment"), and are insufficient to raise a triable issue of fact as to whether defendant created or had notice of the condition since, *inter alia,* plaintiff testified that the two (2) men came from the back of the store, not by where she fell; she did not see any employee in the aisle where she fell prior to the accident or anybody working on the subject refrigerated case or the refrigeration system while she was in the store; she has "no idea" about the source of the puddle; and she has no other information about there being any work or service

on the cooling system or any of the refrigerators in the Riverhead store. (Collins Aff., Ex. S at 38-39, 63, 81).

Likewise, Mr. Graziano's assumption, *i.e.*, speculation, that the liquid came from the refrigerated cases because an employee of defendant stated "that they were cleaning out the refrigerator cases," (Collins Aff., Ex. U at 42), is insufficient to raise a triable issue of fact as to whether defendant created or had notice of the condition, particularly because, *inter alia*, he also testified that he did not observe anything that indicated to him that the refrigerated cases in the area of the accident were being cleaned out at the time of the accident and he does not know and never learned of the source of the liquid; neither he nor plaintiff ever saw any of defendant's employees in the aisle or near the subject refrigerated case at any time prior to the accident; and the record is devoid of any evidence from which it may reasonably be inferred that the subject refrigerated case, or any case adjacent thereto, was being cleaned out or repaired, or that any such activity created the wet floor condition. (*Id.* at 42-43).

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it[.]" *Gordon v American Museum of Natural History*, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646, 492 N.E.2d 774 (N.Y. 1986); *accord Tenay*, 281 F. App'x at 14. There is no evidence in the record that anyone, including plaintiff and her husband, ever observed the puddle prior to the accident; nor is there any evidence in the record from which a rational jury could reasonably find, *inter alia*, that the puddle had been present for a sufficient length of time prior

15

to the accident for defendant to have discovered and remedied it.[11] *See Paredes v. Target Corp.*, No. 16-cv-5603, 2019 WL 955073, at * 3 (E.D.N.Y. Feb. 27, 2019) ("Plaintiff must provide some basis for an inference that the spill was there long enough to blame defendant for the accident." (quotations, alterations and citation omitted)); *accord Lyman v. PetSmart, Inc.*, No. 16-cv-4627, 2018 WL 4538908, at * 7 (S.D.N.Y. Sept. 21, 2018), *appeal dismissed*, No. 18-3175 (2d Cir. Jan. 18, 2019). Since "a jury should not be allowed to conclude, based on mere speculation, that a condition was visible and apparent for a sufficient length of time to be discovered and remedied, . . . the record must contain evidence of either how the substance got there or how long it was there before the fall." *Painchault*, 2011 WL 4344150, at *4 (quotations and citations omitted); *see also Diaz v. Target Corp.*, No. 15-cv-5731, 2017 WL 4358754, at * 3-4 (E.D.N.Y. Sept. 21, 2017) ("To survive a motion for summary judgment, [the plaintiff] must provide some basis for an inference that the liquid was there long enough to blame [the defendant] for the accident. . . . [I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." (quotations, alterations and citation omitted)); *Strass*, 2016 WL 3448578, at * 5 ("Summary judgment is warranted where a plaintiff fails to submit evidence that the dangerous condition was present for some time before the accident occurred." (quotations and citation omitted)).

Plaintiff does not proffer any evidence, beyond mere speculation, as to how the puddle came to exist or as to how long it had existed prior to her fall. There is no competent evidence

---

[11] Indeed, in her opposition to defendant's motion for summary judgment, plaintiff entirely fails to address the issue of whether the condition existed for a sufficient length of time prior to the accident for defendant to have discovered and remedied it.

16

that the liquid had spread or been tracked through the store; that anyone or anything else had ever passed through the puddle prior to the accident, *e.g.*, footprints, cart marks, etc.; or that the puddle contained debris, had increased in size or had existed long enough that it changed color, temperature or consistency. *See, e.g. Watts v. Wal-Mart Stores, LP*, No. 16-cv-4411, 2018 WL 1626169, at * 8 (S.D.N.Y. Mar. 29, 2018); *Casierra*, 2010 WL 2793778, at * 2-3; *Casiano v. Target Stores*, No. 06-cv-6286, 2009 WL 3246836, at * 4 (E.D.N.Y. Sept. 24, 2009). Absent such evidence, the puddle that allegedly caused plaintiff's fall "could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation." *Gordon*, 67 N.Y.2d at 838, 501 N.Y.S.2d 646; *see also Lyman*, 2018 WL 4538908, at * 7 (finding that absent any evidence indicating how long the puddle existed before the plaintiff fell, "a verdict in [the] plaintiff's favor . . . would constitute speculation, rather than a finding of fact." (quotations and citation omitted)); *Casierra*, 2010 WL 2793778, at * 3 (accord). Accordingly, no rational jury could reasonably find that defendant had constructive notice of the puddle prior to the accident. *See, e.g. Lyman*, 2018 WL 4538908, at * 7 (holding that the plaintiff had not "met her burden of raising a triable issue that the puddle existed for a sufficient length of time so as to establish Defendant's constructive notice[,]" where she failed to put forth any evidence of how long the puddle existed before she fell); *Painchault*, 2011 WL 4344150, at * 4 (finding that there was nothing in the record to indicate that the defendant had constructive notice where there was no evidence that the spill was present for any significant amount of time before the plaintiff slipped and fell); *Watts*, 2018 WL 1626169, at * 8 (granting summary judgment to defendant where the plaintiff "failed to present any evidence other than speculation regarding the length of time that the substance was on the ground.")

17

Indeed, the fact that plaintiff claims the liquid was still cold when she fell, (Collins Aff., Ex. S at 30), suggests that it was not present on the floor long enough to have reached room temperature; and the only other evidence in the record from which the length of time the puddle existed may reasonably be inferred is Dastres's assertions that she had inspected the area where plaintiff fell approximately ten (10) to fifteen (15) minutes prior to the accident and found the floor to be "clean, dry and free of liquids or spills." (Collins Aff., Ex. V, ¶¶ 8-10). "Generally, this amount of time is insufficient to find that a defendant had constructive notice of the dangerous condition." *Lyman*, 2018 WL 4538908, at *8 (citing cases); *see also Strass*, 2016 WL 3448578, at * 5 ("Where a defendant conducts regular inspections and fails to discover any hazards prior to a plaintiff's slip and fall, there can be no showing of constructive knowledge and summary judgment in favor of the defendant is appropriate.")

Since defendant has demonstrated an absence of evidence from which a jury may reasonably infer that it created the condition that allegedly caused plaintiff to fall, or that it had actual or constructive notice of that condition, which is an essential element of a slip-and-fall negligence case as to which plaintiff bears the burden of proof at trial under New York law, it has established its entitlement to judgment as a matter of law. *See, e.g. Strass*, 2016 WL 3448578, at * 5 ("[S]ummary judgment is warranted because Plaintiffs fail to offer evidence as to an element which they bear the burden at trial, *i.e.*, that the substance was on the floor long enough for one of Defendant's employees to have discovered it, so as to support a finding of constructive notice.") Accordingly, defendant's motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure is granted and defendant is granted judgment as a matter of law dismissing plaintiff's claims against it in their entirety.[12]

IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted to the extent set forth herein and defendant is granted judgment as a matter of law dismissing plaintiff's claims in their entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendant and close this case.

SO ORDERED.

                                                                 /s/
                                          Sandra J. Feuerstein
                                          United States District Judge

Dated: May 2, 2019
       Central Islip, New York

---

[12] In light of this determination, it is unnecessary to consider defendant's remaining contentions.